902 So.2d 426 (2005)
STATE of Louisiana
v.
Connell R. JONES.
No. 04-KA-1258.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*428 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, William C. Credo, III, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, Connell Jones, appeals from his conviction of attempted possession of cocaine. We affirm the conviction and sentence.
The Defendant was charged on September 17, 2003 with possession of cocaine in violation of La.R.S. 40:967(C).[1] He pled not guilty at his arraignment on December 12, 2003, was tried on May 11, 2004 before a six person jury, and found guilty of the lesser charge of attempted possession of cocaine, La. R.S. 40:967(c) and La. R.S.14:27. He was sentenced to two and one-half years in parish prison, suspended, and two and one-half years of active probation and was charged the same day as a habitual offender. The Defendant stipulated to the habitual offender bill of information. After vacating the original sentence, the trial judge sentenced the Defendant to imprisonment at hard labor for one year and three months. He subsequently appealed.
On August 20, 2003, Detective Elvin Modica of the Jefferson Parish Sheriff's *429 Office (JPSO), obtained a search warrant for a residence on Third Street, a high crime area in Kenner. He later learned that Ross resided at that address. After obtaining the warrant, Detective Modica set up surveillance of the apartment. On August 28, 2003, the investigating officers decided to execute the search warrant, but because of the type of doors on the apartment, they waited until someone exited the apartment before attempting to enter.[2] While they were waiting, a woman, later identified as Shelia Butler, entered the apartment. As she was leaving, the officers detained her, identified themselves and entered the residence. Inside, they encountered Ross, Edmund Russell (Russell), and the Defendant. Russell was in the front room and Ross ran out the back door when he saw them and was chased down. The detective explained that Ross ran because he either had drugs on him or the officers saw him discard drugs. Detective Modica testified that, during the surveillance, he did not see Ross, Russell, or the Defendant enter the house through the Third Street side of the residence.
Detective David Angelica with the JPSO was also at the scene. During his hour-long surveillance on August 28, 2003, he did not see anyone go in or come out of the back door. When he and the other officers entered the apartment, Detective Angelica saw the Defendant sitting on a bed in the bedroom. No one else was in the room. Detective Angelica removed the Defendant from the bed, patted him down, and handcuffed him for safety reasons. Then, he ordered the Defendant to lie down on the floor, but the Defendant refused to obey verbal commands. Detective Angelica then placed the Defendant in the prone position on the floor, on the side of the bed where he had been sitting. Detective Angelica then observed two off-white colored rocks on the bed where the Defendant had been sitting. Detective Modica testified that cocaine rocks were not normally left on places like bed sheets, but usually kept in places that are not accessible to everyone.
Other items seized during the search of the apartment were: one white off-colored rock contained in half of a Sugar Babies bag, two clear plastic bags containing off-white colored powder, and a gray Nokia cellular phone. Ross claimed ownership of the Sugar Babies bag and the cell phone. The State and the Defendant stipulated that the substances recovered contained cocaine and had a gross weight of .20 grams.
Russell, the Defendant's long-time friend, testified that he was out in the courtyard of the apartment complex when the Defendant and his girlfriend walked up. The Defendant said that he needed to use the phone and asked Russell to walk to Ross' apartment with him. Russell and the Defendant went into Ross' apartment through the front door and into Ross' bedroom where the phone was located. Russell claimed that he sat at the foot of the bed, while the Defendant sat in a chair by the phone and made a phone call. Russell claimed that the Defendant never sat on the bed. Russell stated that the officers arrived approximately five minutes later.
According to Russell, when the officers entered the bedroom, they told Russell and the Defendant to get on the floor. One officer made Russell lay on the floor next to the bed and the Defendant was placed on the floor next to the table. Russell *430 sell testified that the Defendant did not sit on the bed until the officers handcuffed him, picked him up, and placed him there. Russell further testified that neither he nor the Defendant had cocaine on them. He said that he never saw cocaine on the bed or anywhere that night. Russell admitted to having felony convictions for possession of cocaine, possession of a firearm, and possession of a stolen car between 1995 and 1996.
On appeal, the Defendant contends that the evidence was insufficient to convict him of the crime and that the trial judge erred in not allowing the jury to view the videotape of the crime scene during deliberations. He further asks for an error patent review.

INSUFFICIENT EVIDENCE
The Defendant argues that the evidence was insufficient to support the verdict of attempted possession of cocaine because, although he was found sitting on two rocks of cocaine, the rocks were so small that they could have been easily overlooked by anyone innocently entering the bedroom to use the telephone. He notes that the bed was unmade and unkempt and that anyone might sit on the small rocks and not even notice them, especially in the excitement of the police entry. Additionally, he asserts that the fact that he did not attempt to flee or conceal his identity suggests the mindset of an innocent man. Finally, he submits that the fact that no contraband or drug paraphernalia was recovered from him likewise undermines the suggestion that the two small rocks on the bed belonged to him.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Bailey, 04-85, p. 4 (La.App. 5th Cir.5/26/04), 875 So.2d 949, 954-955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476. When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. Bailey, 04-85 at 4, 875 So.2d at 955. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. State v. Marcantel, 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56; Bailey, 04-85 at 5, 875 So.2d at 955.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). In cases involving circumstantial evidence, La.R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." A different test is applied on appellate review. In State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83, the Louisiana Supreme Court stated:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a the Defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.... (Citations omitted; emphasis in the original).
*431 See also: State v. Ingram, 04-551 (La. App. 5th Cir.10/26/04), 888 So.2d 923, 925-926.
Here, the Defendant was convicted of the responsive verdict of attempted possession of cocaine. To support a conviction for possession of cocaine, the State must present evidence establishing beyond a reasonable doubt that the Defendant was in possession of cocaine and knowingly and intentionally possessed it. La. R.S. 40:967(C); State v. Sylvia, 01-1406, p. 3 (La.4/9/03), 845 So.2d 358, 361. Guilty knowledge is an essential element of the crime of possession of contraband. Since guilty knowledge is a state of mind, it need not be proven as fact, but may be inferred from the circumstances. State v. Major, 03-3522, pp. 8-9 (La.12/1/04), 888 So.2d 798, 803; State v. Lathers, 03-941, p. 6 (La.App. 5th Cir.2/23/04), 868 So.2d 881, 885.
The element of possession may be established by showing that the Defendant exercised either actual or constructive possession of the substance. A person not in physical possession of the drug is considered to be in constructive possession of a drug, even though it is not in his physical custody, when the drug is under that person's dominion and control. Lathers, 03-941 at 6, 868 So.2d at 885. A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control of the drugs. State v. Marshall, 02-1067, pp. 8-9 (La.App. 5th Cir.2/25/03), 841 So.2d 881, 888, writ denied, 03-0909 (La.9/26/03), 854 So.2d 345.
The question of possession hinges on the particular facts of each case. Mere presence in an area where drugs are found or mere association with the person in actual possession does not constitute constructive possession. Major, 03-3522 at 7, 888 So.2d at 802. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and, (6) evidence that the area was frequented by drug users. Id.; State v. Williams, 01-644, pp. 5-6 (La.App. 5th Cir.11/27/01), 802 So.2d 909, 913. Proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. State v. Johnson, 404 So.2d 239, 245 (La.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); Lathers, 03-941 at 6, 868 So.2d at 885.
Evidence which would support a conviction of a charged offense would necessarily support a conviction of a lesser included offense. Sylvia, 01-1406 at 3, 845 So.2d at 361.
An attempt is defined in La.R.S. 14:27, which provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
....
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by *432 such person in pursuance of such attempt.
To prove an attempt, the State must show that the defendant committed an act tending directly toward the accomplishment of his intent to possess cocaine. State v. Lee, 03-901, p. 7 (La.App. 5th Cir.12/9/03), 864 So.2d 654, 659. Possession of cocaine is a general intent crime. Sylvia, 01-1406 at 9, 845 So.2d at 364. However, an attempt requires specific intent to commit the crime. See: Id. at ftnt. 1.
General criminal intent is present "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2); Sylvia, 01-1406 at 8, 845 So.2d at 364. Specific criminal intent exists "when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Chattman, 01-556, p. 9 (La.App. 5th Cir.10/30/01), 800 So.2d 1043, 1048, writ denied, 01-3320 (La.12/19/02), 833 So.2d 332. The factfinder may draw reasonable inferences to support these contentions based upon the evidence presented at trial. State v. Lee, 03-901 at 7, 864 So.2d at 659.
Here, Detective Angelica testified that he entered the bedroom and found the Defendant alone in the room, sitting on the bed. When the Defendant was removed from the bed, two rocks of cocaine were discovered in the spot on the bed where the Defendant had been sitting. In contradiction to this testimony, the Defendant's friend, Russell, claimed that he was present in the room when the police arrived and never saw cocaine that night, either on the bed or on the Defendant. He said that the Defendant was sitting in the chair where he had just used the telephone when the Detective entered the bedroom. Russell testified that the Defendant did not sit on the bed until the officers placed him there.
The jury was confronted by conflicting testimony. Thus, the determination of that fact rested solely with the jury, who may accept or reject, in whole or in part, the testimony of any witness. See: Bailey, 04-85 at 4, 875 So.2d at 955. We can neither assess the credibility of witnesses or re-weigh the evidence. See: Marcantel, 00-1629 at 9, 815 So.2d at 56; Bailey, 04-85 at 5, 875 So.2d at 955. Thus, the State proved that the Defendant was in close proximity to the cocaine.
In addition, the jury could have concluded that the Defendant had guilty knowledge of the drugs and constructive possession. He was in an apartment in a high crime area and was found in close proximity to the cocaine. He also refused to obey the detective's order to get off the bed and had to be physically placed on the floor. Based on the evidence, they could have concluded that he sat on the drugs to hide them from the police. Thus, we find that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the Defendant was guilty of attempted possession of cocaine, and that the evidence excluded every reasonable hypothesis of innocence.

JURY'S REQUEST TO REVIEW VIDEOTAPE
The Defendant argues that the trial judge erred in refusing the jury's request to review the crime scene videotape during its deliberations. He contends that the justification for such a review was *433 compelling because the evidence of his guilt was not great. He further contends that a review of the tape would have permitted the jury to better evaluate the strength of the State's case on this very critical issue.
La.C.Cr.P. art. 793 provides in pertinent part:
A. Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
A trial judge has sound discretion in permitting the jury's review of properly-admitted evidentiary exhibits during its deliberations, including audiotapes and videotapes. State v. Brooks, 01-0785, p. 4 (La.1/14/03), 838 So.2d 725, 728.[3]
Here, Detective Modica made a videotape of the scene and the narcotics that were seized during the search. He explained that the tape was not a chronological log of what happened from the time he got there until the time he left. He stated that the videotape was designed to show the scene, the evidence, where the evidence was located, and the general surroundings. When the State indicated that it was going to show the videotape, defense counsel initially objected, asserting that the videotape was not a depiction of the crime scene as the officers went into the house, and that it was done after the officers conducted the search and after "everything in the house was tampered with," and therefore, it was not an accurate depiction. He contended that the best evidence would be the testimony of the officer as to the location of everything rather than the videotape, and that the videotape would not lend any assistance to the State and might lead to jury confusion.
The trial judge asked defense counsel if he was requesting exclusion of the videotape. Defense counsel then withdrew his objection and said he would handle the matter on cross-examination. The videotape was played for the jury, with Detective Modica describing the scenes in the videotape. The videotape showed the front of the building, the glass door with the black garbage bag taped to it, the four rooms, the two off-white colored rocks found on the bed in the bedroom, and the candy bag containing the off-white colored rock.
After the jury retired to deliberate, the foreperson of the jury asked to view the videotape again. The trial judge denied the request without reasons. Defense counsel objected to the trial judge's ruling on the basis that he told the jury in his closing argument that the jury would be able to bring the videotape into the jury room to assist them in their deliberations. He noted that the videotape had been introduced by the State. As the audio portion of the tape was unclear, he argued that the trial judge could bring the jury into the courtroom and allow them to view the videotape in the trial judge's presence without the audio. Defense counsel further argued that the jury most likely wanted to see the videotape because it showed where the evidence was located. Defense counsel noted that location of the drugs *434 was relevant and would assist the jury in reaching its decision considering that the Defendant's case hinged on the location of the drugs. The trial judge declined to change his ruling.
The jury was able to view the videotape during Detective Modica's testimony. Detective Modica was thoroughly questioned about the videotape on direct and cross-examination. After viewing the videotape and considering the case as a whole, we find that that Defendant was not prejudiced by the ruling and that the trial judge did not abuse his discretion in refusing to allow the jury to view the videotape during deliberations.

PATENT ERROR
The record was reviewed for patent errors in accordance with La.C.Cr.P. art. 920. See: State v. Oliveaux, 312 So.2d 337 (La.1975); Bailey, 04-85 at 17, 875 So.2d at 962. The review reveals no errors requiring our action.
AFFIRMED.
NOTES
[1] Troy R. Ross (Ross) was also charged with possession of cocaine in the same bill of information.
[2] The front and back doors were heavy duty doors and the front door was constructed with glass and metal, like a business door. A black garbage bag was taped to the glass. The officers could not use a standard ram to get through the front or back doors because they opened outward. They were also concerned that the glass might be shatter proof.
[3] Citing United States v. Cruz-Paulino, 61 F.3d 986, 997 (1st Cir.1995); United States v. Hofer, 995 F.2d 746, 748 (7th Cir.1993); United States v. Scaife, 749 F.2d 338, 347 (6th Cir. 1984).