938 So.2d 90 (2006)
STATE of Louisiana
v.
Brian S. YOUNG.
No. 05-KA-702.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 2006.
*93 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Martin A. Belanger, Jr., Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant, Brian S. Young, was charged with and tried for possession of cocaine, a violation of LSA-R.S. 40:967(C). Various pre-trial motions, including a Motion To Suppress, were filed by Young. Following a jury trial, Young was found guilty of the lesser included offense of attempted possession of cocaine. He was initially sentenced to two and one-half years at hard labor, and following a finding that he was a fourth felony offender, was sentenced to twenty-five years at hard labor, without benefit of probation or suspension of sentence. Young appeals his conviction. We affirm and remand for resentencing.
Captain Thomas Whitted of the Westwego Police Department testified that, at about 2:30 a.m. on August 2, 2003, he was on duty in an unmarked patrol car. Whitted was driving, and Captain Van Plaisance was riding with him. The officers were at the corner of the Westbank Expressway and Avenue A when they spotted Young walking back and forth "meandering" through the parking lot of a Fina gas station, which was closed. Young walked out toward the pumps and turned around, and walked back, drawing the officers' attention. Plaisance testified that the police department had received numerous complaints of drug activity at the filling station, and had executed a search warrant for that location where drug activity, burglaries, and thefts had been reported. Plaisance called for backup, and Officer Usey responded. The officers' vehicle approached the parking lot slowly, observing Young's actions. Young seemed nervous, and when he spotted the vehicle, he tried to avoid eye contact and turned around. As Whitted pulled up to the parking lot, Plaisance testified that Young made a motion with his right hand and threw something down, which the officers could hear when it hit the ground. Whitted and Plaisance got out of the car, and Plaisance said to Young, "Come see, I want to talk to you." Plaisance asked Young what he had thrown down, to which Young replied, "It's a pipe." Plaisance searched in the throw-down area and found a glass pipe. Officer Usey found a large rock of crack cocaine within a couple of feet from where Young had been standing. The rock was eight or nine times larger than usual. At that point Young was taken into custody.
*94 Usey testified that, at the same time, he saw an object bounce on the ground near Young. Usey exited his car and picked up an off-white rock-like object that appeared to him to be crack cocaine. He conducted a field test on the object, and it was positive for the presence of cocaine. Usey took custody of the rock and the pipe. At trial, he identified State's Exhibit 1 as the crack cocaine he recovered.
Charles Krone testified that he is a forensic chemist with the Jefferson Parish Sheriff's Office. The parties agreed to stipulate to Krone's expertise in the examination and identification of narcotics. Krone testified that he tested State's Exhibit 1 and that the results were positive for the presence of cocaine. Krone further testified that the piece of crack weighed 1.2 grams.
On appeal to this Court, Young raises three assignments of error, among which we find the claim of "insufficiency of the evidence." When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot.[1]
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] Evidence may be direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[3] When circumstantial evidence is used to prove a case, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." On appellate review, the test has been stated by the Louisiana Supreme Court:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a Defendant could afford an exculpatory explanation of the events." . . . Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. . . .[4]
To support a conviction for possession of a controlled dangerous substance (here cocaine), in accordance with LSA-R.S. 40:967(C) the State must present evidence establishing beyond a reasonable doubt that Young was in possession of the illegal drug and that he knowingly and intentionally possessed it.[5] Guilty knowledge is an essential element of the crime of possession of a controlled dangerous substance, *95 and such knowledge may be inferred from the circumstances.[6] A person not in physical possession of the drug is considered to be in constructive possession of a drug, even though it is not in his physical custody, when the drug is under that person's dominion and control.[7] Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users.[8]
Evidence which would support a conviction of a charged offense would necessarily support a conviction for a lesser included offense.[9] An attempt is defined in LSA-R.S. 14:27, which provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
. . . .
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
To prove attempted possession of a controlled dangerous substance, the State must show that the defendant committed an act tending directly toward gaining possession of the substance.[10] While possession of cocaine is a general intent crime, an attempt requires specific intent.[11] Specific criminal intent exists "when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant.[12] The factfinder may draw reasonable inferences to support these contentions based upon the evidence presented at trial.[13]
Young argues that the State failed to prove the element of possession because none of the officers could say they saw the rock of crack cocaine or the crack pipe in his hands.
However, we find that the jury could have reasonably inferred that he had possession of the crack cocaine. The events leading up to his arrest took place at 2:30 a.m. in the parking lot of a filling station that was not open for business. Young *96 was the only person in the vicinity when the officers spotted him.
There was substantial circumstantial evidence that no one other than defendant abandoned the crack cocaine. Captain Whitted testified that the area was well lit. There was nothing obstructing the officers' view of Young. Plaisance testified that Young was eight feet away from the front of his police car when he made a motion with his hand, and Plaisance immediately alerted the other officers to the "throw down." Within moments, Plaisance found the crack pipe "a couple of feet" from where Young stood. He testified that the rock of crack cocaine was also "a couple of feet" from Young. Whitted also testified that he saw Young make a hand motion, and, moreover, he heard the pipe hit the ground. Usey testified that he did not see the object leave Young's hand but that he did see the white rock bounce off the black asphalt, near Young, and went directly to retrieve it. When asked, Young admitted to having thrown a pipe, a piece of drug paraphernalia, and this admission was strong circumstantial evidence that he had dominion and control over the crack cocaine. We also find the admission went toward proving guilty knowledge. Thus, we find that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Young was guilty of attempted possession of cocaine and that the evidence excluded every reasonable hypothesis of innocence.
Young next alleges that the trial court erred in failing to suppress physical evidence as a result of an illegal seizure. By this assignment, Young complains that the trial court should have suppressed the evidence seized at the scene, as it was the product of an illegal stop.
Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops which permit officers to stop and interrogate a person reasonably suspected of criminal activity. The Terry standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes a police officer "to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and to demand that the person identify himself and explain his actions."[14] The "reasonable suspicion" necessary for an investigatory stop "is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference."[15]
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). "The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression."[16] To determine whether the trial court's denial of the motion to suppress is correct, the appellate court may consider the evidence *97 adduced at the suppression hearing as well as the evidence presented at trial.[17] In determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, "giving deference to the inferences and deductions of a trained police officer `that might well elude an untrained person.'"[18] Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his or her knowledge of recent criminal patterns, and his or her knowledge of an area's frequent incidence of crime.[19] While an individual's mere presence in a high-crime area, standing alone, is insufficient to justify an investigatory stop, his presence in a high-crime area coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop.[20]
At the suppression hearing, Captain Plaisance testified that the business where Young was standing was known to have a big problem with crack cocaine. He stated that he had once participated in the arrest of a service station attendant for selling crack there. When Plaisance first spotted Young, he was behaving in a nervous and suspicious manner. It was 2:00 a.m., and the filling station was closed. Young was pacing back and forth in the filling station's empty parking lot, and he appeared to be checking to see whether someone was watching him. Plaisance testified that there had been recent burglaries in the area. The officer said that Young's actions caused him, based on his law enforcement expertise, to investigate what he was doing there.
Captain Whitted was specific both at trial as well as at the hearing as to his reasons for stopping Young. Given the articulated circumstances, it was reasonable for the officers to reasonably suspect that Young might be planning to burglarize the filling station. The officers were entitled to approach Young to determine what he was doing on the premises at that hour of the morning.
Young argues that the officers did not have reasonable suspicion to stop him, and that the seizure of the cocaine and pipe resulted from an unlawful "seizure" of his person. In the instant case, the relevant inquiry is whether, at the time Young abandoned the cocaine, the officers had illegally accomplished an actual or imminent actual stop. When officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. But if property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then the property may be lawfully seized and used in the resulting prosecution.[21] Because these rules of inadmissibility are intended to protect individuals from unwarranted, forcible governmental interference "`it is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the `right to be left alone' is violated, thereby rendering unlawful any resultant *98 seizure of abandoned property.'"[22] An actual stop is imminent "only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. . . ."[23]
Factors to be considered in determining whether an actual stop is imminent include: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.[24]
A seizure does not occur simply because an officer approaches an individual and asks a few questions, as long as a reasonable person would feel free to disregard the police and go about his business. The test for whether a "seizure" has occurred, then, "is whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter."[25] In deciding what constitutes a "reasonable person," one must look "from the viewpoint of an innocent person in his position."[26] Accordingly, the question that the Court must address in determining at what point a seizure occurred is at what instant would police conduct have communicated to a reasonable, innocent person that he was not free to decline the officer's request or otherwise terminate the encounter.[27]
Here, the record reflects that Young was not actually stopped until after he abandoned the cocaine. The record also reflects that no unlawful imminent stop triggered his abandonment of the cocaine. Young was not surrounded by the police. Only three police officers were involved in the encounter, and they approached Young slowly in two cars. When they stopped the unmarked police car near Young, he turned away. Whitted testified that he told Young through the open car window, "`Come see, I want to talk to you,'" and it was then Young threw something on the ground. Captain Plaisance and Officer Usey both stated that they were still inside their unmarked police car when Young made a motion with his hand as if he were throwing something. There was no testimony that the officers drew their guns or that they surrounded Young. Nothing in the record shows that the officers approached him with such force that, regardless of his attempts to flee, an actual stop was virtually certain.
Given all these facts, we cannot say that the seizure of the cocaine was the product of an unlawful stop or seizure. This assignment of error is without merit.
Finally, Young contends the trial court erred in failing to grant a mistrial when the prosecutor elicited testimony which Young terms "other crimes evidence." During re-direct examination of State's witness Captain Thomas Whitted, *99 the prosecutor asked what property Young had on his person at the time of arrest. Whitted replied, "A South Louisiana prison I.D. and I think maybe some keys." Defense counsel made an objection and, during a sidebar discussion moved the judge to grant a mistrial, arguing that the reference to a prison identification suggested to the jury that defendant had a prison record. The judge denied the mistrial motion without reasons.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is inadmissible at trial due to the risk of grave prejudice to the defendant.[28] LSA-C.Cr.P. art. 770 mandates a mistrial upon motion of the defendant "when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to . . . [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is inadmissible [.]" Mistrial is a drastic remedy which should be employed only where remarks result in substantial prejudice sufficient to deprive the defendant of a fair trial.[29]
A mistrial is not warranted unless a witness clearly refers to other crimes alleged to have been committed by the defendant.[30]
[A] comment must not "arguably" point to a prior crime; to trigger mandatory mistrial pursuant to Article 770(2), the remark must "unmistakably" point to evidence of another crime. State v. Babin, 336 So.2d 780 (La.1976) (where reference to a "mug shot" was not unmistakable reference to a crime committed by defendant); State v. Harris, 258 La. 720, 247 So.2d 847 (1971) (where no crime was evidenced by a police officer's reference to obtaining defendant's photograph from the Bureau of Investigation). In addition, the imputation must "unambiguously" point to defendant. State v. Edwards, 406 So.2d 1331, 1349 (La.1981), cert. denied sub nom. Edwards v. La., 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). The defendant has the burden of proving that a mistrial is warranted. See State v. May, 362 So.2d 516 (La.1978).[31]
In this instance, Whitted did not refer to a specific "other crime" committed by Young. Young did not meet his burden of showing a mistrial was warranted. This assignment of error is without merit.
Our error patent review discloses that neither the habitual offender transcript nor the commitment shows that the trial court vacated Young's original sentence of two and one-half years before imposing the habitual offender sentence. Further, the habitual offender transcript shows that the court erred in advising Young that he had "two years from the date of this sentence to seek post-conviction relief." LSA-C.Cr.P. art. 930.8 provides that a defendant has two years "after the judgment of conviction and sentence has become final" in which to file a post-conviction relief application.
*100 For the foregoing reasons, Young's conviction is affirmed. The matter is remanded to the trial court for habitual offender re-sentencing, with instructions that the court first vacate Young's original sentence, advise him of the proper time limitation at his habitual offender re-sentencing, and file written proof in the record that Young received such notice.
AFFIRMED; REMANDED FOR RESENTENCING.
NOTES
[1] State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363, p. 7 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
[2] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
[3] State v. Jones, 04-1258 (La.App. 5 Cir. 4/26/05), 902 So.2d 426.
[4] State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83; State v. Jones, supra.
[5] LSA-R.S. 967(C); See also, State v. Jones, supra.
[6] State v. Alo, 04-62 (La.App. 5 Cir. 10/12/04), 886 So.2d 1130.
[7] State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 885.
[8] State v. Jones, supra.
[9] Id.
[10] State v. Lee, 03-901 (La.App. 5 Cir. 12/9/03), 864 So.2d 654, 659.
[11] State v. Jones, supra.
[12] State v. Chattman, 01-556 (La.App. 5 Cir. 10/30/01), 800 So.2d 1043, 1048, writ denied, 01-3320 (La.12/19/02), 833 So.2d 332.
[13] State v. Jones, supra.
[14] State v. Becnel, 04-1266 (La.App. 5 Cir. 5/31/05), 904 So.2d 838 (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); See also, State v. Melancon, 03-514 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 229, writ denied, 03-3503 (La.4/23/04), 870 So.2d 297.
[15] State v. Becnel, supra.
[16] State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 138, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159 (citation omitted).
[17] Id.
[18] State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049 (per curiam) (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
[19] State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073.
[20] Id.
[21] State v. Tucker, 626 So.2d 707, 710 (La. 1993).
[22] State v. Mitchell, 877 So.2d 1151, 1155 (La.App. 5 Cir. 2004) (citing State v. Belton, 441 So.2d 1195, 1199 (La.1983)).
[23] Id.
[24] Id.
[25] State v. Long, 2003-2592 (La.9/9/04), 884 So.2d 1176 (citing Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991)).
[26] Id.
[27] Id.
[28] State v. Williams, 01-1007(La. App. 5 Cir. 2/26/02), 811 So.2d 1026, 1030.
[29] Id.
[30] State v. Fisher, 03-326, p. 14 (La.App. 5 Cir. 7/29/03), 852 So.2d 1075, 1083, writ denied, 03-2545 (La.5/14/04), 872 So.2d 510.
[31] State v. Edwards, 97-1797, p. 20 (La.7/29/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999).