975 So.2d 31 (2007)
STATE of Louisiana
v.
Jerry C. HOLLINGSWORTH.
No. 07-KA-691.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2007.
*32 Paul D. Connick, Jr., District Attorney Terry M. Boudreaux, Andrea F. Long, David M. Abdullah, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
The defendant, Jerry Hollingsworth, has appealed his conviction of possession of cocaine in violation of LSA-R.S. 40:967(C). The conviction is affirmed for the reasons that follow.
FACTS:
On July 30, 2006, defendant was arrested at his residence at 404 21st Street in Gretna, after an investigation regarding a narcotics complaint involving a white male named "Jerry" living at this residence. Sergeant Bill Johnson of the Gretna Police Department testified that in response to the confidential information regarding narcotics activity, he knocked on the door of defendant's residence at about 4:30 a.m. According to Sergeant Johnson, defendant answered the door and was asked if his name was Jerry. Both Sergeant Johnson and Officer Lester Cambre III, who assisted in the investigation, testified that defendant immediately answered when they knocked on the door. They both opined that defendant had to be in the living room to answer the door so quickly. After defendant said his name was Jerry, Sergeant Johnson advised him they had received a narcotics complaint regarding his residence. Sergeant Johnson testified that *33 defendant denied the allegations of the complaint, but signed a Consent to Search form.
Both police officers testified that defendant and two other males were in the living room. Officer Cambre testified that the other two males in the living room were sitting on the day-bed in the living room. Sergeant Johnson noted that besides the day-bed, there were no other chairs or couches to sit on in the living room.
Officer Cambre stated that he went into the house and cleared it of its occupants for his safety after defendant consented to the search. He found another individual, Cornelius Singleton, sitting down in the bedroom. Sergeant Johnson stood outside with the occupants of the residence while the residence was searched. Officer Cambre searched the living room and found, in plain view, crack cocaine on the day-bed. On an end table, within an arm's length reach, there were two crack pipes, a spoon with white residue on it, and a metal socket used in the form of a crack pipe. These items were entered into evidence by the State. A search of the bedroom where Mr. Singleton was located revealed marijuana and a marijuana pipe. However, Mr. Singleton was not arrested for the marijuana because defendant gave a statement claiming that the marijuana was his. No one claimed ownership of the crack cocaine. Officer Cambre testified that the individuals in the house were wearing "regular clothes." Three of the four occupants of the residence were arrested; Mr. Singleton was released.
Thomas Angelica, an expert in the identification and the analysis of controlled dangerous substances, analyzed the two pieces of off-white material, and testified that they contained cocaine.
Defendant took the stand and testified that he arrived at his home at around midnight. He explained that upon his arrival, Shelby Pusateri, who was staying with him for a couple of weeks, and Sam Reed were at his residence watching television. Defendant stated that he did not see them engaged in criminal conduct nor did he participate in criminal conduct. Defendant testified that he talked to them for a couple of minutes and then went straight to sleep because he had to wake up early.
Defendant testified that about 4:00 in the morning someone knocked on the door and Mr. Pusateri answered it. Mr. Pusateri woke defendant up and told him Mr. Singleton wanted to talk to defendant about money Mr. Singleton owed him from when Singleton and his girlfriend stayed with defendant and failed to pay rent. Defendant told Mr. Pusateri to let him in, and Mr. Singleton pulled up a chair and defendant talked to him in the bedroom.
According to defendant, 10 or 15 minutes later there was another knock at the door. Defendant stated that he walked out of the bedroom and just as he got to the door, Mr. Pusateri opened the front door. Defendant denied that he opened the door when the officer's knocked. Defendant testified that the police were at the door and they asked for Cornelius Singleton. Defendant testified that he told the police that Mr. Singleton was in the bedroom, and defendant yelled for Mr. Singleton to come out. According to defendant, by the time he turned his head, the officers were in the front room. Defendant denied that the officers were invited in.
Defendant testified that Sergeant Johnson brought him into the kitchen and explained that a confidential source told them drugs were being sold out of his house that night. Defendant testified that he told Sergeant Johnson that he did not know anything about that, stating that *34 when he went to bed at midnight there were no drugs in the house, to his knowledge. Defendant testified that he believed Mr. Singleton was the confidential source because defendant had told Mr. Singleton to leave defendant's house for not paying rent. However, Officer Cambre was called as a defense witness and denied that Mr. Singleton was the confidential source.
Defendant testified that the officers discovered he, Mr. Pusateri, and Mr. Reed had traffic attachments, and they were handcuffed. Defendant said he had been sleeping, so he was wearing only boxer shorts. He received permission to put clothes on. Defendant testified that he went to the officer's car and was asked to sign a consent form to search the residence and he signed it. Defendant testified that the officers said they found some crack and wanted to know who it belonged to, but no one claimed it. According to defendant, he never saw the cocaine or crack pipes that were discovered in his living room and did not know the contraband was in his apartment. Defendant testified that a girl was at his house two days before with the marijuana and pipe, and he did not know she left it there. Defendant testified that he took responsibility for the marijuana because it was his house, even though the marijuana was not his. He testified that he did not use cocaine and could not use such substances because of a quadruple bypass he had in 2003. He stated that he does not allow people to use narcotics in his residence and that Mr. Pusateri was given strict rules not to bring drugs into his house.
Defendant was charged with possession of cocaine, possession of drug paraphernalia, and possession of marijuana. The cocaine charge was tried to a jury. At the conclusion of trial the defendant was found guilty as charged. He was sentenced to one year at hard labor, the sentence was suspended and he was sentenced to one year active probation. He pled guilty to the marijuana and paraphernalia charges and received probation for those charges which was to run concurrently with the cocaine sentence. This appeal involves only the cocaine conviction.
ASSIGNMENTS OF ERROR:
In his sole Assignment of Error, defendant argues the evidence in this case was insufficient to support his conviction of possession of cocaine. He argues that the State failed to exclude beyond a reasonable doubt that the cocaine was in the possession of one or both of the males who were in the residence in very close proximity to the cocaine and not defendant. He contends that beyond his mere presence in the area, no evidence was presented to show that he knew of or exercised dominion and control over the cocaine.
The State responds that the record demonstrates that, viewing the evidence in the light most favorable to the prosecution, the jury could have found the essential elements of possession of cocaine beyond a reasonable doubt.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, supra, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
"Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience." State v. Williams, 05-59, p. 5 (La. App. 5 Cir. 5/31/05), 904 So.2d 830, 833 *35 (citation omitted). When circumstantial evidence is used to prove the commission of an offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181, (La.App. 5 Cir. 6/1/99), 738 So.2d 672, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
To support a conviction for possession of cocaine, the State was required to prove that defendant was in possession of the drug and that he knowingly or intentionally possessed it. LSA-R.S. 40:967(C); State v. Robinson, 04-964, (La.App. 5 Cir. 2/15/05), 896 So.2d 1115.
The element of possession may be established by showing defendant exercised either actual or constructive possession of the substance. State v. Lewis, 04-1074 (La.App. 5 Cir. 10/6/05), 916 So.2d 294, writ denied, 05-2382 (La.3/31/06), 925 So.2d 1257. A person not in physical possession of the drug is considered to be in constructive possession of the drug, even though the drug is not in his physical custody, when it is under that person's dominion and control. Id. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include the following: (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users. Lewis, 04-1074 at p. 8, 916 So.2d at 299.
"A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs." Lewis, 04-1074 at p. 7, 916 So.2d at 299. "Mere presence in an area where drugs are found or mere association with the person in actual possession does not constitute constructive possession." State v. Jones, 04-1258, p. 7 (La.App. 5 Cir. 4/26/05), 902 So.2d 426, 431. However, "[p]roximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence." Jones, 04-1258 at pp. 7-8, 902 So.2d at 431.
In the case at bar, we find the evidence presented by the State was sufficient for the jury to reasonably conclude that defendant exercised dominion and control over the cocaine constituting constructive possession. Despite defendant's contention that he did not know there was cocaine at the residence, his guilty knowledge can be inferred from the circumstances. Defendant resided at the premises where the cocaine was found and clearly had access to this area of his home. Further, two police officers testified that when they arrived at 4:30 a.m., defendant was present, awake, and wearing "regular clothes". The cocaine was found in the living room in plain-view on a day-bed, which was the only place to sit in the living room. The officers testified that defendant answered the door immediately, leading them to believe that defendant had been in the living room when they knocked.
*36 The State also presented evidence indicating there was drug activity occurring at defendant's residence. Evidence was presented that the officers were conducting an investigation based on a narcotics complaint. Further, after knocking at the door, the officer asked for "Jerry." Defendant, whose first name is Jerry, was one of three individuals in the living room. Besides the cocaine, two crack pipes, a socket in the form of a crack pipe, and a spoon with white residue were found on the end table, a short distance from the day-bed.
Defendant testified that Mr. Pusateri was living with him at the time and had a key. Defendant testified that he had suspicions that Mr. Pusateri possibly smoked crack, but that he gave Mr. Pusateri strict rules not to bring drugs into his house. Further, defendant claimed responsibility for the marijuana found in the bedroom, although defendant testified it belonged to someone else. Defendant denied that he answered the door and stated he came from the bedroom, wearing only his boxer shorts, when he heard the knock. He also denied that he knew the cocaine was present.
The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. As such, the credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052.
Given the evidence presented, we find the jury could have rationally rejected the hypothesis of innocence advanced by defendant, and found that the evidence proved beyond a reasonable doubt that the defendant was in possession of cocaine. Thus, viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to convict defendant of possession of cocaine.
The record was reviewed for errors patent in accordance with LSA-C.Cr.P. art. 920. This review indicates there is a discrepancy between the commitment and the transcript regarding whether the fine and costs were made part of defendant's sentence or were ordered as condition of probation. However, this discrepancy is moot because the record reveals the defendant was released from probation and his probation was "terminated satisfactorily".
For the foregoing reasons, the defendant's conviction is affirmed.
AFFIRMED.