986 So.2d 762 (2008)
STATE of Louisiana
v.
Jermaine SELTZER.
No. 08-KA-34.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*763 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of *764 Jefferson, Terry M. Boudreaux, Jeffrey J. Hand, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
EDWARD A. DUFRESNE, JR., Chief Judge.
On March 22, 2007, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jermaine Seltzer, with attempted disarming of a police officer in violation of LSA-R.S. 14:27 and 14:34.6 (count 1), and possession of cocaine in violation of LSA-R.S. 40:967 C (count 2). At the March 23, 2007 arraignment, defendant pled not guilty. On May 14, 2007, the trial judge heard and denied defendant's motion to suppress the evidence. Defendant then filed a writ application with this Court seeking review of the trial court's denial of his motion to suppress. On June 25, 2007, this Court denied the writ, stating as follows:
The relevant inquiry is whether, at the time relator abandoned the drugs, the officer had legally accomplished an actual or imminent actual stop. State v. Young, 05-702 (La.App. 5 Cir. 2/14/06), 938 So.2d 90. If property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then the property may be lawfully seized and used in a resulting prosecution. It is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the `right to be left alone' is violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Dobard, 2001-2629 (La.6/21/02), 824 So.2d 1127 (citing State v. Tucker, 626 So.2d 707 (La.1993)).
In the present case, the circumstances cited by the arresting officer constituted reasonable suspicion under La.C.Cr.P. art. 215.1(A). Therefore, we find no error in the denial of relator's motion to suppress.
State v. Seltzer, 07-K-419 (La.App. 5 Cir. 6/25/07) (unpublished writ disposition). Defendant subsequently filed a writ application with the Louisiana Supreme Court which was also denied. State v. Seltzer, 07-1313 (La.6/27/07), 959 So.2d 516.
On July 25, 2007, the matter proceeded to trial before a twelve person jury which found defendant guilty as charged. Thereafter, on August 7, 2007, the trial court sentenced defendant to imprisonment at hard labor for two and one-half years on count 1 and imprisonment at hard labor for five years on count 2 to run concurrently. The State filed a multiple bill alleging defendant to be a second felony offender, and defendant admitted those allegations. The trial judge vacated the original sentence on count 2 and resentenced defendant to imprisonment at hard labor for six years to run concurrently with the sentence on count 1. Defendant now appeals.

FACTS
On March 7, 2007, Deputy Daniel Kerr of the Jefferson Parish Sheriffs Office was patrolling the Lincolnshire area in Jefferson Parish, a known highcrime, high-narcotics area. At approximately 7:30 p.m., as Officer Kerr was driving down Lapalco Boulevard, he noticed a man, later identified as defendant, "meandering, wandering" around a convenience store that was in a poorly lit area and that had already closed. The officer also observed that this individual had a walkie-talkie in his hand. *765 Deputy Kerr did not stop the first time he saw defendant, but rather continued to respond to his calls for service. While answering those other calls, Officer Kerr passed the convenience store numerous times and observed defendant each of those times either on the side or back of the building.
Being suspicious of either a street level narcotics sale or a burglary, Deputy Kerr decided to investigate. The officer pulled up approximately ten feet from defendant and asked him to come and put his hands on the back of the patrol unit. Defendant, who had his right hand in his pants pocket and a walkie-talkie in his left hand, did not comply immediately. Eventually, he reached behind his back, placed the walkie-talkie in his pocket, and began walking towards the deputy. As defendant approached the deputy's unit, he still had his right hand in his pocket, which the deputy considered threatening. Deputy Kerr told defendant to remove his hand from his pocket for safety reasons. As defendant removed his hand, Deputy Kerr saw him throw a clear plastic baggie to the ground, and then place his hands on the unit. Without losing sight of the object, Deputy Kerr retrieved it and observed that it contained two off-white rock-like objects consistent with that of crack cocaine.[1]
Deputy Kerr began to take out his handcuffs and advise defendant of his rights. However, defendant then pushed off the deputy's unit and attempted to flee. Deputy Kerr grabbed onto defendant's arm and tried to restrain him. Defendant struggled, started swinging at the officer, and punched him in the face. The two continued to struggle, and while Deputy Kerr was trying to deploy his taser into defendant's leg, defendant broke free and ran away. Deputy Kerr chased him, giving him commands to stop. The officer caught up with defendant, and another struggle ensued. Defendant got on top of the officer and started swinging at him. Eventually, Officer Kerr managed to stand up, but as he did so, defendant lunged at him and wrapped his arms around the deputy's waist. At this time, Deputy Kerr felt significant pulls at his weapon. When he looked down, the deputy saw defendant's hands wrapped around the grip of the weapon. Deputy Kerr held on to his gun, grabbed his baton, and struck defendant until he released his grip. Defendant fell to the ground, but then got up, ran away, and jumped a fence. Deputy Kerr radioed for assistance. Deputy Michael Leyva responded to the call, and the two officers were eventually able to apprehend defendant.
At trial defendant testified in his own behalf. He admitted that on March 7, 2007, he was standing outside the convenience store for approximately fifteen or twenty minutes. However, he claimed that he was merely waiting for somebody to go into the store and buy something for him. According to defendant, although the owner of the store would serve him, his wife, who was working that night, would not. Defendant also testified that the officer pulled up on the curb, stepped out of his unit with a taser in his hand, and told him to place his hands on the car. Defendant walked away and attempted to flee because he felt like he did not do anything wrong and because he feared for his life. He asserted that when the officers eventually apprehended him, they hit him in his head with their "billies," and as a result, he needed twenty-eight stitches. Defendant initially denied trying to grab the officer's weapon; however, he subsequently testified that during the struggle he *766 probably hit the weapon or tried to get it loose. Defendant denied being in possession of the crack cocaine and testified that he did not know where it came from.
Rose Seltzer, defendant's mother, was called as a witness by the defense. She testified that defendant lived with her in the Lincolnshire subdivision and further that they used walkie-talkies to communicate with each other because she was sick and needed to keep in touch with defendant.
The defense also called Doi Nguyen, the owner of the store, as a witness. He testified that his store closes at 8:30 p.m. However, he explained that, if the metal doors were closed, then the store was closed.[2] Nguyen testified that defendant came into his store almost every day.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
On appeal, defendant challenges the trial court's denial of his motion to suppress the evidence. He contends that Deputy Kerr did not have reasonable suspicion of criminal activity to justify an investigatory stop and seizure, and therefore, any evidence obtained as a result of this seizure was tainted and should be suppressed. Defendant maintains that his actions at the convenience store were consistent with innocent, non-criminal behavior. He also asserts that he had the right to resist the unlawful arrest. We find no merit to these arguments.
We first note that this Court, in a prior writ application, has already considered and rejected defendant's arguments. Under the discretionary principle of "law of the case," an appellate court will generally not reconsider prior rulings made in the same case on subsequent appeal unless, in light of a subsequent trial record, it is apparent the determination was patently erroneous and produced unjust results. State v. Jacobs, 04-1219 (La.App. 5 Cir. 5/31/05), 904 So.2d 82, 88, writ denied, 05-2072 (La.4/28/06), 927 So.2d 282, cert. denied, ___ U.S. ___, 127 S.Ct. 385, 166 L.Ed.2d 276 (2006). Even though we are not bound to reconsider our prior ruling, we have nonetheless reviewed defendant's arguments in light of the entire trial court record. Our review of the record clearly supports our prior determination that the trial court did not err in denying defendant's motion to suppress evidence.
Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops which permit officers to stop and interrogate a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The Terry standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes a police officer to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and to demand that the person identify himself and explain his actions. The "reasonable suspicion" necessary for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. *767 State v. Young, 05-702 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 96.
In a hearing on a motion to suppress, the State has the burden of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. In determining whether the trial court's ruling on a defendant's motion to suppress is correct, the appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial. State v. Butler, 01-907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049. Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidence of crimes. While an individual's mere presence in a high-crime area alone is insufficient to justify an investigatory stop, his presence in a high-crime area coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop. State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076.
When officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. However, if property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then the property may be lawfully seized and used in the resulting prosecution. State v. Young, 938 So.2d at 97.
Having reviewed applicable jurisprudence, we find that the officer in the present case clearly had reasonable suspicion to stop defendant. Defendant was in a poorly lit area "meandering" around a convenience store that had already closed. He was also talking on a walkie-talkie, which the deputy testified was conducive with a street level narcotics sale. In addition, the convenience store was in a highcrime, high-narcotics area. We find that these circumstances were sufficient to warrant a reasonable belief in the officer that criminal activity might be occurring. See State v. Young, 938 So.2d at 98; State v. Darby, 550 So.2d 963, 966 (La.App. 5 Cir. 1989); and State v. Cook, 332 So.2d 760, 763 (La.1976), where courts have found, in cases similar to the instant one, reasonable suspicion to stop defendants.
Defendant discarded the cocaine after a legal stop, and therefore, its seizure was not illegal. Since the stop was legal, it is unnecessary to consider defendant's argument that he had the right to resist an unlawful arrest. State v. Darby, 550 So.2d at 966. In light of the foregoing discussion, we find that the trial court did not err in denying defendant's motion to suppress the evidence. The issues raised by defendant in his first two assignments of error are without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action.
*768 Accordingly, for the reasons set forth herein, we affirm defendant's convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] At trial, Daniel Waguespack, an expert in the field of drug analysis, testified that the substance retrieved in this case tested positive for cocaine.
[2] At trial Deputy Kerr testified that at the time he saw defendant outside the store, the metal doors were down.