554 So.2d 796 (1989)
STATE of Louisiana
v.
Toussaint Z. WHITE.
No. 89-KA-478.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 1989.
Writ Denied March 30, 1990.
*797 Martin E. Regan, Jr., Kevin V. Boshea, Isidro Rene DeRojas, New Orleans, for defendant-appellant.
John M. Mamoulides, Dist. Atty., Alan Green, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
GRISBAUM, Judge.
This is a Crosby appeal. See State v. Crosby, 338 So.2d 584 (La.1976). The defendant, Toussaint Z. White, pled guilty to possession of cocaine (La.R.S. 40:967). We affirm.
ISSUES
The defendant, in brief, assigns as error the following, to-wit: "BASED ON THE FACTS IN THE INSTANT CASE, DID THE POLICE HAVE SUFFICIENT ARTICULABLE FACTS REGARDING CRIMINAL ACTIVITY, TO SUPPORT A FINDING OF REASONABLE SUSPICION SO AS TO JUSTIFY THE STOP[,] DETENTION AND QUESTIONING OF THE DEFENDANT[,] TOUSSAINT Z. WHITE[,]" and since the initial stop of Mr. White was defective, by the standards of both federal and Louisiana law, the information contained thereby could not be considered by the police, in finding further probable cause to justify the arrest. State v. Matthews, 366 So.2d 1348, 1352 (La.1978).
PROCEDURAL HISTORY
On January 25, 1989, a bill of information was filed against Toussaint Z. White charging him with possession of cocaine in excess of 400 grams. On March 7, 1989, he was arraigned and pled not guilty. He then filed a pretrial motion to suppress evidence, which, following a hearing, was denied. After conducting a Boykin colloquy with the defendant and his retained counsel, the trial court accepted the Crosby plea and sentenced the defendant to 15 years imprisonment at hard labor, with credit for time served. The court suspended the last five years of the sentence and ordered that the first five years of the remaining ten years be served without benefit of parole, probation, or suspension of sentence. The court also levied a $250,000 fine against the defendant but suspended payment of $200,000 of that fine.
FACTS
At the hearing of the motion to suppress, the arresting officers were the only witnesses to testify. Their testimony is summarized as follows:
On January 12, 1989, Detective Glenn Davis and Agent Wendy Juncker from the Narcotics Division of the Jefferson Parish Sheriff's Office were assigned to conduct routine surveillance of certain scheduled airline flights arriving at New Orleans International Airport. One of the flights selected for surveillance that day was American Airlines Flight 548 which originated in Los Angeles, a recognized source city for drugs entering the New Orleans area. Detective Davis and Agent Juncker positioned themselves near the arrival gate for the flight. When the flight arrived, the two officers closely observed the exiting passengers. One of the arriving passengers immediately caught the attention of the two officers because of his extremely nervous behavior. That passenger was later identified as Toussaint White, the defendant in this case. According to Agent Juncker, the defendant was a "nervous wreck" as he deplaned. At the hearing, both officers testified that White walked along the airport concourse at a very fast pace, constantly looking all around to see if he was being followed. The defendant went directly from the arrival gate to the baggage claim area where White's nervous behavior continued. In addition to looking around to see if he was being watched, White started looking outside the airport building as if searching for someone in particular. When the baggage from the *798 flight arrived in the claim area, White picked up a brown suitcase, looked at the baggage tag on it and then replaced the suitcase on the conveyor belt. He once again looked outside the building toward a cab stand where he then saw Terry Hunter. Both officers observed Hunter signal White to come outside. White approached Hunter and the two shook hands. The men engaged in a brief conversation, looked towards the two police officers, and then began walking along the outside of the building.
At that point, Davis and Juncker approached the two men, identified themselves as police officers and asked if White and Hunter would mind speaking to them. Both White and Hunter agreed to talk to the officers. Detective Davis spoke to Hunter, while Agent Juncker spoke with White. Davis asked Hunter why he was at the airport, and Hunter replied that he had come to meet his brother who was arriving on American Airlines Flight 548. In response to further questioning, Hunter stated that he had not seen his brother, and Hunter specifically denied that White was his brother or that he even knew White. During questioning by Agent Juncker, however, White stated that Hunter had come to the airport to pick up the defendant.
At the request of Detective Davis, Hunter produced a Louisiana driver's license issued in his name and showing his residence as Baton Rouge. Detective Davis then started questioning the defendant, asking White where he had flown in from that morning. White responded that he had come from Los Angeles. Davis asked to look at White's airline ticket, but White said he had apparently lost it between the time he left the flight arrival gate and the time he reached the baggage claim area. According to White, he might have dropped the ticket in the airport restroom after he arrived. Both Davis and Juncker knew that White did not stop at a restroom after arrival because both officers had constantly observed White from the time he deplaned until he arrived at the baggage claim area. White then denied that he had checked any luggage onto the flight from Los Angeles and stated his only luggage was the shoulder bag he was carrying. With White's consent, the officers searched the shoulder bag and found no contraband. White's nervous behavior continued throughout the questioning by the officers.
Detective Davis asked White and Hunter if they would mind returning to the baggage claim area for additional questioning. Both men agreed and then accompanied the officers inside the building to the baggage claim area, where Davis asked White for consent to search his person. White consented to the search, stating that he had nothing to hide. In the inside pocket of the coat White was wearing, Detective Davis found an American Airlines baggage claim receipt issued under the name "S. Johnson." Davis gave the claim receipt to Agent Juncker and asked her to look for the piece of baggage checked aboard the flight under that receipt. Juncker returned to the baggage conveyor belt and located a brown suitcase with a claim tag corresponding to the claim receipt found in White's pocket. She returned with the piece of luggage and placed it between White and Hunter. In response to questioning by Detective Davis, the defendant denied that the luggage was his. Davis then specifically asked White if he would mind the detectives searching the luggage. White replied that he did not care about any search because the luggage did not belong to him. Upon opening the unlocked suitcase, Detective Davis found a square package wrapped up in a shirt. The package was heavily covered with tape. Davis then asked White and Hunter to step inside a nearby American Airlines office for a closer inspection of the package. The two men complied. Upon further inspection, the package was found to contain a white powder which appeared to be cocaine. Detective Davis formally placed White and Hunter under arrest and advised the two men of their rights. Laboratory analysis later confirmed that the substance in the square package was cocaine.
ANALYSIS

Law
The right of law enforcement officers to stop and interrogate one reasonably suspected *799 of criminal conduct is found in La.C. Cr.P. art. 215.1(A), which states:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Our courts have consistently held that reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Chopin, 372 So.2d 1222 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). If the detaining officer does not have objectively reasonable cause to suspect the person of criminal activity, evidence seized or otherwise obtained as a direct result of the detention cannot constitutionally be admitted into evidence against him at trial. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Matthews, supra.
However, not all encounters between police and citizenry amount to Fourth Amendment "seizures." As stated in Terry: "Obviously, not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Terry, supra, at 88 S.Ct. 1879, fn. 16. "As long as a reasonable person would feel free to disregard the encounter and walk away, there has been no `seizure.'" State v. Ossey, 446 So.2d 280, 285 (La.1984) (citations omitted); State v. Belton, 441 So.2d 1195, 1199 (La.1983).
In light of our statutory and jurisprudential guidelines, we must closely examine the encounter between the defendant and the police officers to determine whether the defendant was being illegally detained at the time of his "consent" to the searches and whether he "freely and voluntarily" consented to the searches.
From our view of the record, we see that Detective Davis and Agent Juncker approached White and Mr. Hunter in a public area. The officers identified themselves as policemen and asked the men if they could speak to them. Both men agreed to talk to the officers. There is no evidence of coercion by the officers and no indication that White and Hunter were not free to disregard the encounter and walk away. Under similar facts, courts have found no "seizure." See United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Ossey, supra. Additionally, the mere fact that Davis and Juncker identified themselves as police officers did not convert this consensual encounter into a seizure. State v. Ossey, supra, at 285; State v. Wiley, 507 So.2d 841, 846 (La.App. 5th Cir.1987).
Furthermore, when the officers asked the men to return to the baggage claim area for additional questioning, both men agreed. In determining whether defendant's consent to accompany the agents was in fact voluntary or was the product of duress or coercion, express or implied, is to be determined by the totality of all the circumstances. United States v. Mendenhall, supra, at 100 S.Ct. 1879. The record is devoid of any evidence suggesting coercion by the officers. The officers' statement was made in the form of a request instead of a demand. The request does not appear to be so overbearingly coercive to defendant as to render his consent involuntary. Moreover, the baggage claim area is located in an area open to the general public. The mere fact that the officers and the men agreed to relocate to continue their conversation does not convert this consensual inquiry in a public place to a seizure. The men were no more constrained to comply with the officers' request than they were in the initial stop. The totality of the evidence reveals that the defendant voluntarily consented to return to the baggage claim area.
Since the defendant voluntarily accompanied the agents, he was not being illegally detained when he consented to the *800 search of his person. The question whether the defendant's consent to the search was in fact voluntary or was the product of duress or coercion is also to be determined by the totality of all the circumstances. State v. Ossey, supra; State v. Davis, 547 So.2d 1367 (La.App. 5th Cir.1989). In response to Detective Davis' request to search his person, the defendant verbally consented, stating that he had nothing to hide. Furthermore, the officer merely requested the search; he did not demand it. There is no sign of any coercion by the officers. The evidence reflects that throughout this whole encounter, the defendant acted "voluntarily in a spirit of apparent cooperation with the officers' investigation." Sibron v. New York, 392 U.S. 40, 63, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). As a result, the baggage claim ticket which Detective Davis discovered was the product of a consensual search conducted during the course of a consensual encounter and was, thus, properly seized. See United States v. Mendenhall, supra; State v. Davis, supra; State v. Thomas, 482 So.2d 32 (La.App. 5th Cir. 1986).
Our inquiry now turns to the search of the suitcase. Property abandoned without any prior unlawful intrusion into a citizen's right to freedom from governmental interference may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. State v. Belton, supra, at 1199; State v. Chopin, supra, at 1224.
The record shows that, upon discovering the baggage claim ticket in the defendant's pocket, Agent Juncker retrieved the suitcase which matched the number on the claim receipt and placed it between White and Hunter. When asked if the suitcase belonged to him, White expressly denied that it was his. Detective Davis then asked White if he would mind a search of the suitcase. White responded that he did not care about a search because the luggage did not belong to him. Only after that did Detective Davis open the suitcase, search through its contents, and discover the heavily taped package wrapped up in a shirt.
This evidence shows that White abandoned the suitcase; therefore, he had no expectation of privacy as to its contents. Since this search took place during the course of a consensual encounter between the officers and the defendant, there was no infringement of White's right to freedom from governmental interference prior to the search. Accordingly, the search of the suitcase was legal and the package found during that search was properly seized.
For the reasons assigned, the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.