926 So.2d 591 (2006)
STATE of Louisiana
v.
Brandon L. ATKINS.
No. 05-KA-823.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2006.
*592 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Donald A. Rowan, Jr., Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
*593 Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
Defendant, Brandon Atkins, appeals his conviction of possession of cocaine, a violation of LSA-R.S. 40:967(C). Defendant pled guilty under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the trial court's denial of his Motion to Suppress Evidence. After review, we reverse holding that the Motion to Suppress was improperly denied and remanded for further proceedings.

FACTS:
On June 14, 2005, a hearing was held on defendant's motion to suppress the evidence. No testimony was taken at that hearing, but the Kenner Police Department Incident Report, which memorialized the fact surrounding the defendant's arrest, was introduced into evidence by stipulation of the parties. The report sets forth the following information:
Probable cause statement:
The defendant matched the description of a suspricious (sic) person possibly selling narcotics, given by H.Q. This R/O conducted a field interview of the defendant, asking him to place his hands on the trunk of the patrol unit. The defendant complied but kept his left hand cupped. When asked to open it, he did so, revealing four off-white rock-like objects, that later tested positive for cocaine. This felony violation occurred in a posted "drug free" zone, approximately 284 feet from the posted "drug free zone" sign.
Narrative:
On February 5, 2005 at approximately 1316 hours, Kenner police dispatch broadcasted a call of four black males possibly selling drugs at the corner of 27th Street and Augusta Street. One black male was described as wearing a red t-shirt and blue jeans, another described as wearing a black hat. No further descriptions were given regarding the other black male subjects.
This officer advised police dispatch that he was around the corner and would respond. This officer arrived on the scene within a minute, but no one was on that corner. However, 4 black males were observed on the next corner, 27th Street and Dawson Street. One of the black males were (sic) wearing a red t-shirt and blue jeans. The four black males were standing on the northeast quadrant of the intersection.
This officer casually proceeded to the corner of 27th Street and Dawson Street, in an attempt not to alarm the four black males. This officer stopped his patrol car next to them and exited. The four black males started to walk away. This officer asked the four black males to come to the patrol car and place their hands on it. This officer met with the black male wearing the red t-shirt and blue jeans at the trunk of the vehicle. This black male, later identified as Brandon L. Atkins, placed his hands on the trunk. However, Brandon Atkins kept his left hand cupped. Brandon Atkins was then asked to open his left hand. He did so, revealing four off-white rock-like objects which tumbled onto the trunk. This officer secured the four off-white rock-like objects. Brandon Atkins was handcuffed and remained positioned at the rear of the vehicle.
Meanwhile, the three other black males placed their hands on the passenger side of the vehicle. Positioned from the rear forward were J.R.B., L.J.G., *594 (both juveniles)[1] and Albert D. Cox.
This officer proceeded to the passenger side of the vehicle and observed a piece of white plastic, tied, with numerous small objects contained inside, on the ground at the feet of J.B. and L.G. This officer secured the piece of white plastic and opened it, revealing numerous off-white rock-like objects. Unable to determine ownership, this officer conducted criminal history checks and completed field interview cards on J.R.B., L.J.G., and Albert D. Cox.
During the investigation, Brandon L. Atkins' father arrived on the scene and asked what was going on with his son. This officer advised him to asked (sic) Brandon. After doing so, Brandon answered his father stating "I had rocks on me."
This officer had headquarters contact the mothers of J.R.B. and L.J.G. Upon their arrival, this officer advised their mothers of the investigation at hand and what was found at their sons' feet. J.B. and L.G. were released into the custody of their mothers. Abert (sic) Cox was released at the scene.
A chemical field test was conducted on a sample of the off-white rock-like objects found in Brandon Atkins' possession. The test returned a positive result for the presence of cocaine, with a recorded weight of 6/10 gram.
Brandon Atkins was transported to the Kenner lock-up, advised of his rights, and charged accordingly.
At the request of this officer, crime scene technician Larry Lacrouts obtained photographs of the scene in regards to the posted "drug free" zone signs which was (sic) approximately 284 feet from the scene and faced east towards the scene. The posted sign is located on the corner of 27th Street and Albany Street.
The four off-white rock-like objects were logged as evidence article # 1. The piece of white plastic containing numerous off-white rock-like objects were logged as evidence article # 2. The evidence was then forwarded to evidence custodian James Devlin. Evidence article # 2 recorded a weight of 1.5 grams.
Case closed.
At the suppression hearing, defense counsel argued that the police could not stop someone based on an anonymous call, and that they needed other corroborating information of criminal activity. Defense counsel contended that the description of the drug dealers provided by the caller was ambiguous, and that there was no reasonable suspicion to detain defendant, order him to the car, and conduct a pat-down. The prosecutor responded that the officer received a tip that an individual was selling narcotics at a particular area, and that the officer went to that area where he located defendant who matched the description given by the caller. The prosecutor argued that the officer approached defendant to conduct a field interview, that the officer was allowed to do that, and that defendant did not have to talk to him. He stated that the officer asked defendant for safety reasons to place his hands on the vehicle, and when he did so, defendant had his hand cupped and refused to open it at first. He said that when defendant finally did open his hand, the officer found narcotics.
Defense counsel stated that the officer did not give specific and articulable facts to indicate that his safety was at issue. The prosecutor argued that the fact that defendant would not open his hand would have made him suspicious that something *595 was going to happen. The judge asked defense counsel whether she placed any weight on the fact that defendant was asked to open his hand and voluntarily did so. Defense counsel said she did not, claiming that when the officer asked the boys to come over to the police car that they were under the officer's control and detention.
After additional argument, the judge denied the motion, stating:
Well, I think that if it's a drug zone and a known drug area, the cursory rights of the policeman involve safety and a cupped hand does not indicate a safe position. Motion denied. Note objection.

ASSIGNMENT OF ERROR
Defendant argues that the trial court erred by failing to suppress physical evidence gathered as the result of an illegal seizure. He contends that the officer did not have reasonable suspicion of criminal activity to detain him or to conduct an investigatory stop, and that the evidence gathered as the result of the illegal seizure should be suppressed.
The state responds that the encounter between the officer and defendant was consensual in nature and, therefore, no Fourth Amendment implications were triggered. The state argues alternatively that if this Court finds that the encounter was not consensual or voluntary, then it could find that the officer had reasonable suspicion to conduct an investigatory stop given the report of possible narcotics activity, defendant's conduct, and the high crime nature of the area. As such, the state concludes that the trial court did not err in denying defendant's motion to suppress the evidence.
In a hearing on a motion to suppress, the state bears the burden of proof in establishing the admissibility of evidence seized without a warrant. State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Id.
The first issue is whether the officer's encounter with defendant constituted a stop under the Fourth Amendment. In State v. Tucker, 626 So.2d 707, 712 (La. 1993), the Louisiana Supreme Court held that an individual has not been "actually stopped" unless he submits to a police show of authority or he is physically contacted by the police. In the instant case, the police report indicates that the officer approached defendant and the three other black males and ordered them to come to the patrol car and place their hands on it, thereby asserting official authority over them, and that they complied. Thus, we find that a stop of defendant occurred because defendant submitted to a police show of authority when he complied with the officer's requests.
The next issue is whether the officer had reasonable suspicion of criminal activity to justify the stop. The Fourth Amendment to the United States Constitution and La. Const. Art. 1, § 5 protect individuals from unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). However, the right of law enforcement officers to stop and question a person where there is reasonable suspicion to believe that the person is committing, has committed or is about to commit a crime was established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also: State v. Keller, 403 So.2d 693, 696 (La.1981); State v. Duran, 96-602 (La. App. 5 Cir. 3/25/97), 693 So.2d 2, 3, application *596 dismissed, 97-1485 (La.1/9/98), 705 So.2d 1087.
The requirements for a valid Terry stop and for any search incident to the stop was codified in LSA-C.Cr.P. art. 215.1, which provides in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
Investigatory stops require reasonable suspicion of criminal activity. "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048.
An officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98. Unfortunately, in this case, the arresting officer did not testify; hence neither the trial court, nor this Court on appeal has before it any evidence concerning the officer's experience, his knowledge of recent criminal patterns and/or any detailed observations concerning the behavior of the defendant prior to the Terry stop.
In State v. Jernigan, 377 So.2d 1222, 1225 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980), the Louisiana Supreme Court held, "[A]n anonymous tip can provide the basis of an investigatory stop. However, the information received from the anonymous tipster must carry enough indicia of reliability, such as specificity of the information and corroboration by independent police work, to justify the stop." In this case the only evidence introduced to support the Terry stop was a police report, which indicated that at, "1316 hours, Kenner Police dispatch broadcasted a call of four black males possibly selling drugs at the corner of 17th Street and Augusta Street." The evidence introduced does not establish the source of this information. Also, importantly, the police broadcast did not report actual criminal conduct, but reported possible criminal activity.
In State v. Johnson, 01-2436 (La.1/25/02), 806 So.2d 647, 648, the Louisiana Supreme Court made clear that a tip,
provided by the anonymous informant may have provided accurate information with regard to respondent's clothing and physical location but it did not, without additional corroborating circumstances, provide reasonable suspicion or probable *597 cause that respondent was engaged in criminal activity.
In Johnson the Louisiana Supreme Court relied on the United States Supreme Court case, Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000), quoting language from the Florida case indicating that, "reasonable suspicion ... requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." While the police have a right to engage anyone in conversation, even without reasonable grounds to believe that they committed a crime, once the officer in this case ordered the defendant to place his hands on the police vehicle, that sign of police force required some reasonable suspicion of criminal activity.
In State v. Bridges, 610 So.2d 827, 828-829 (La.App. 4 Cir.1992), the appellate court found reasonable suspicion to justify a stop under circumstances similar to the instant case. In Bridges, officers received a call at 10:56 p.m. from the dispatcher concerning a suspicious person possibly selling narcotics at Clio and Baronne Streets. The person was described as a black male wearing a yellow shirt. The officers arrived at that location a few minutes later and saw Bridges, who wore a yellow shirt, standing in the doorway of a convenience store. Bridges was the only person in the area who fit the description. Bridges saw the police officers arrive, and he walked into the "lobby area" of the convenience store. The officers walked up to Bridges to interview him, then decided to frisk him because the area was known for a high amount of sales and use of narcotics and drug dealers were known to carry weapons. Id.
The officers asked Bridges to place his hands against the wall, and Bridges placed his left hand flat against the wall but kept his right hand clenched. Believing that Bridges may have had "some type of weapon or narcotics in his right hand," one of the officers asked Bridges to unclench his hand. Bridges refused to do so, and a struggle ensued between him and the officers. Bridges was subdued and handcuffed, and Bridges's hand was unclenched revealing a broken glass tube with a burned residue inside. The tube was believed to be used to smoke crack cocaine, the source of the burned residue. Id. at 828.
On appeal, defendant, Bridges, complained that the trial court erred in denying his motion to suppress the evidence. He argued that the police had no reasonable suspicion when they stopped him because he was not doing anything suspicious when they saw him and they did not corroborate the information received from the dispatcher. He further argued that the forcing open of his closed hand exceeded the permissible scope of a search incident to an investigatory stop because the officer testified that Bridges's hand was forced open to see if he held a weapon or narcotics. Bridges also argued that the officers had no reasonable basis to believe that he actually had a weapon in his closed hand. Id. at 829.
The appellate court found in Bridges that, although Bridges was not engaged in any kind of suspicious activity when the police arrived at the scene and the description of the suspicious person given by the dispatcher was not very detailed, Bridges was wearing a yellow shirt and was where the dispatcher stated that the suspicious person wearing the yellow shirt would be. Additionally, it noted that that person was said to be possibly selling drugs, and that the area was known for its high incidence of narcotics trafficking. The appellate court found that, considering the totality of the circumstances, the police had reasonable suspicion to make an investigatory *598 stop of Bridges. Id. The appellate court further found that, under the circumstances, the officers were justified in forcing open Bridges's clenched fist, because the officer unequivocally stated that he believed that Bridges could have had a weapon in his hand. Id.
Unlike the facts in Bridges, no evidence of past narcotics activity in this area was introduced during the suppression hearing. Also, in this case, unlike Bridges, the defendant was not found at the location indicated by the broadcast. Although the dispatch indicated possible drug activity at the corner of 27th Street and Augusta Street, the four black males, who were stopped, were found at 27th Street and Dawson, the next corner, and not at the 27th Street and Augusta Street corner, which was indicated in the broadcast. The broadcast did indicate that one of the black males was wearing a red t-shirt and blue jeans and that one of the black males was wearing a hat. The officer who conducted the Terry stop observed one of the four individuals was wearing a red t-shirt and blue jeans, but observed no one wearing a hat. The police report does not indicate that the officer saw hand to hand transactions or any drugs at the reported location. These factors enter into the totality of circumstances and are to be reviewed by the courts in determining whether corroborating circumstances provided reasonable suspicion to make an investigatory stop of defendant. In light of the Supreme Court's decision in Florida v. J.L., we find that the State did not meet its burden of demonstrating that the stop was constitutionally valid because it failed to establish sufficient corroborating circumstances to establish suspicion of criminal activity.
In State v. Chark, 96-1667 (La.App. 3 Cir. 4/30/97), 693 So.2d 316, 317-320, a case similar to the instant one, the appellate court found no reasonable suspicion to justify the stop. In Chark, police officers observed defendant on a street corner in a high crime area at 11:30 p.m. leaning against a tree. They testified that when defendant saw them, he walked away from the tree and approached his bicycle. The officer approached Chark and questioned him. At that time, the officer noticed that Chark's fist was clenched. The officer asked defendant to show him what he was holding in his hand, and defendant eventually complied, revealing four rocks of cocaine. The appellate court concluded that defendant had been stopped within the meaning of the Fourth Amendment, and that the record did not support a finding of reasonable suspicion to justify the stop. It noted that the officer did not see the clenched fist until after the defendant had been detained. The court found that, at most, the officer had an unparticularized, general hunch regarding the defendant's possible involvement in criminal activity, which did not support the investigatory stop. Id. Because, in this case, there is no information regarding the source of the police broadcast, we do not know whether the information broadcasted was based by an unparticularized general hunch, or an anonymous caller or some other source. Additionally, like in the Chark case the police conduct was based on the possibility of criminal conduct and not some articulable suspicion of criminal conduct.
For the foregoing reasons, the denial of the Motion to Suppress is reversed, the defendant's conviction is reversed and this matter is remanded to the trial court for further proceedings.
REVERSED; VACATED; AND REMANDED.
CHEHARDY, J., dissents.
NOTES
[1] Initials are used to protect their identity because they are juveniles.