CLARENCE E. McMANUS, Judge.
|2Pefendant, Arthur Thomas, was convicted of one count of possession of cocaine, and sentenced to five years at hard labor. Defendant now appeals from his conviction and sentence.
The following facts were adduced at defendant’s trial. Sergeant Curtis Mat *82 thews, a narcotics officer with the Jefferson Parish Sheriffs Office, testified that he participated in the investigation leading to the arrest of defendant, Arthur Thomas, for possession of cocaine. Sergeant Matthews stated that at 7:00 p.m. on June 26, 2006, he began surveillance of the residence at 605 North Lester Street in Me-tairie. Detectives Edward Greer and Eric Dufrene worked with him. Detective Greer functioned as Sergeant Matthews’ “cover” officer[1] during the operation. Each officer was in his own unmarked vehicle, and they positioned themselves in different locations near the targeted residence.
| ¡¡Detective Greer testified that the officers were watching the residence because a white woman living there was alleged to be involved in illegal activity. According to Sergeant Matthews, the officers had also received information that a black man was expected to arrive on a bicycle and “distribute narcotics from the residence.”
Sergeant Matthews testified that Detective Greer, who could see the residence from his position, alerted him by police radio that a subject was approaching the house. Sergeant Matthews drove toward the house, and he saw defendant approach on a bicycle. Sergeant Matthews exited his car, approached defendant on foot and identified himself as a police officer. He explained to defendant that he was conducting a narcotics investigation, and he advised defendant of his rights.
Sergeant Matthews instructed defendant to place his hands on the police vehicle, and asked him if he had any illegal narcotics on his person. Defendant looked toward the ground and sighed. Based on this response, Sergeant Matthews asked defendant if he had any drugs. Defendant said he had crack. When the officer asked him where the crack was, defendant said it was in his pocket. Sergeant Matthews testified that he immediately checked defendant’s pockets, and recovered one off-white, rock-like object, later identified as crack cocaine. The officer completed a pat-down search of defendant, but did not recover any additional contraband.
In his first allegation of error, defendant alleges that the trial court erred in denying his motion to suppress evidence. He argues the police officers did not have reasonable suspicion to stop him, nor did they have probable cause to support a lawful arrest; therefore, the warrantless seizure of cocaine from his pocket was illegal. The State responds that the evidence was not seized pursuant to an | .¡unlawful detention, since the encounter between defendant and the officers remained consensual. Alternatively, the State argues that the seizure was valid under the inevitable discovery doctrine.
Sergeant Curtis Matthews was the only witness at the suppression hearing. He testified that his department received an anonymous telephone call on its narcotics hotline regarding a residence on Lester Street. The caller stated that a white woman at that house used narcotics, and that numerous people frequented the place. Sergeant Matthews said he did not speak to the caller directly, and he did not know whether that person was reliable. Based on the information from the anonymous caller, Sergeant Matthews and Detective Greer began surveillance of the residence on June 26, 2006, at 7:00 p.m. By 8:00 p.m., the officers had not seen any suspicious activity, and they decided to perform a “knoek-and-talk” at the resi *83 dence. When the officers knocked on the door, there was no response. At that point the officers decided to take a meal break.
Sergeant Matthews testified that after he and Detective Greer left their surveillance positions, they spoke to Deputy Vernon Bourgeois, who was regularly assigned to that neighborhood. Deputy Bourgeois told them he had learned from area residents that the traffic to and from the targeted house generally began when a black man on a bicycle arrived there. According to Bourgeois, the neighbors who gave him that information did not want to be identified due to fear of retaliation. Sergeant Matthews testified that he and Detective Greer resumed surveillance on the house at 8:30 p.m. defendant, a black man, arrived at the house riding a bicycle, at 9:15 p.m. Defendant stopped the bicycle on the north side of the residence. Sergeant Matthews told Detective Greer over the radio that they would approach defendant and determine whether he would voluntarily comply with their investigation.
IsThe officers identified themselves to defendant and asked whether he lived at the house. Defendant said he did not. With a view toward getting defendant away from the house, Sergeant Matthews asked him to step over to Detective Greer’s vehicle in the street. Defendant complied. Sergeant Matthews advised him of his rights. Defendant indicated that he understood his rights. Sergeant Matthews then asked defendant to place his hands on Detective Greer’s car. Defendant looked toward the ground and sighed, as if something was wrong. Based on defendant’s reaction, Sergeant Matthews asked him if he had any narcotics. Defendant replied, “[Y]eah, in my pocket.” Sergeant Matthews observed that defendant was looking at his left pocket. The officer immediately reached into that pocket and retrieved an off-white, rock-like object. Sergeant Matthews then handcuffed defendant.
Sergeant Matthews testified that he field-tested the rock-like object, and the result was positive for cocaine. Sergeant Matthews learned that defendant had an outstanding attachment in Kenner. Detective Greer transported defendant to the Jefferson Parish Correctional Center and booked him.
At the conclusion of the suppression hearing, the trial court denied defendant’s motion to suppress without giving reasons.
Defendant now argues that at the point at which the police officers ordered him to place his hands on the car, he was subject to an unlawful arrest, or, alternatively, to an illegal investigatory stop. Defendant maintains that the police officers observed nothing unusual or suspicious prior to their decision to approach him; and the unsubstantiated reports from the anonymous tipsters were not — by themselves — sufficient to support reasonable suspicion for a stop or probable cause for a warrantless arrest.
| fiThe Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Warmack, 07-311 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 107.
In State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1182-83, citing United States v. Watson, 953 F.2d 895, 897 n. 1 (5th Cir.1992), cert. denied, 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992), the Louisiana Supreme Court discussed the three-tiered analysis of interaction between citizens and police occurring under the Fourth Amendment:
*84 At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention.
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts.
At the third tier, a custodial “arrest,” the officer must have “probable cause” to believe that the person has committed a crime.
(Citations and footnote omitted).
Law enforcement officers are authorized to stop and interrogate persons reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The Terry standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes a police officer “ ‘to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and to demand that the person identify |7himself and explain his actions.’ ” See State v. Young, 05-702 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 96. The “ ‘reasonable suspicion’ ” needed for an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference. State v. Warmack, 973 So.2d at 107.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Warmack, supra. To determine whether the trial court’s denial of the motion to suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing as well as the evidence presented at trial. State v. Young, 938 So.2d at 96-97.
In the instant case, when the officers first approached defendant, they merely spoke to him. It is settled that
law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.
Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). As long as a reasonable person would feel free to disregard the police and walk away, the encounter is consensual and no reasonable suspicion is required. Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). There is no indication in the record that defendant was not free to disregard the officers when they spoke to him. The verbal contact alone involved the first tier of | ^Fisher, and did not implicate Fourth Amendment concerns of detention or coercion.
Sergeant Matthews testified that when he asked defendant to move toward the parked police car, defendant willingly complied. The record does not show that de *85 fendant’s consensual walk to the police car was coerced by the officers. It appears the officer’s statement was made in the form of a request rather than a demand. The request does not appear to have been so forceful or overbearing as to make defendant’s consent involuntary. See State v. White, 554 So.2d 796 (La.App. 5 Cir.1989), writ denied, 558 So.2d 601 (La.1990); State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713.
Sergeant Matthews testified at the motion hearing that once defendant had moved away from the house and closer to the police car, he advised him of his Miranda rights. The officer then “asked [defendant] to place his hands on the side of Detective Greer’s unit so I could just do a pat-down and make sure he didn’t have any weapons.” Defendant did not submit to that request. We do not believe that the officer’s request that defendant place his hands on the car, without defendant’s compliance, constituted a show of authority sufficient to raise the encounter to an investigatory stop under the second tier of Fisher[2].
When Sergeant Matthews asked defendant whether he had any narcotics, defendant volunteered that he had some in his pocket. This admission gave the officers probable cause to arrest defendant and to search him incident to the arrest. Accordingly, the rock of crack cocaine was not illegally seized, and the trial court [ 9did not err in denying defendant’s motion to suppress the evidence. We find defendant’s first allegation of error to be without merit.
In his second allegation of error, defendant alleges that the trial court erred in denying his mistrial motion, which was based on prejudicial testimony given by Sergeant Matthews at trial. The State responds that the facts did not warrant a mistrial, and that any prejudice to defendant was cured by the trial court’s admonition to the jury. Defendant specifically complains of the following exchange between the prosecutor and Sergeant Matthews:
Q. And would you give us a sequence of events once you pulled up in your unit to the house and got out?
A. As I arrived at the location, I observed the Defendant on one portion of the side of the house. I believe it was the north side of the house. He was in the driveway area. As I approached him, I identified myself. I was in plain clothes; more likely, a pair of jeans and a regular shirt. I revealed my badge to him, advised him who I was and asked him to come to the street area with me so I could speak with him. Once we got towards the street area, I explained to him that we had a narcotics investigation where a black male on a bicycle was going to arrive and distribute narcotics from the residence.
At that point, defense counsel objected and moved for a mistrial. The attorneys argued the motion out of the jury’s pres *86 ence. Defense counsel asserted that Sergeant Matthews had made a prejudicial reference to narcotics distribution, another crime more serious than the one with which defendant was charged. Counsel conceded that the comment was not made by an officer of the court, nor was it purposely elicited by the prosecutor; but he maintained it would nonetheless prevent defendant from receiving a fair trial.
| mThe trial court ruled that since the prosecutor had not purposely elicited the objectionable comment, it was not governed by LSA-C.Cr.P. art. 770,[3] but by LSA-C.Cr.P. art. 771,[4] which offers the trial court the option of admonishing the jury rather than declaring a mistrial. The judge denied the mistrial motion and proposed that the jury be admonished to disregard the officer’s unsolicited comments. Defense counsel objected to the court’s denial of his mistrial motion, and moved that, under the circumstances, the court admonish the jury. The judge explained to defendant what the admonishment would include, and defendant agreed to the judge’s proposed language. The judge then instructed the jury to disregard Sergeant Matthews’ testimony about the information he received that a black man was going to arrive on a bicycle to distribute narcotics. The judge ordered that the comment be stricken from |T1the record. He stressed that defendant was charged with simple possession of cocaine, and that that was the only charge before the jury.
In defendant’s case, the remark complained of was not made by the judge or a court official;[5] nor was it purposely elicited by the prosecutor. It therefore did not satisfy the requirements for a mandatory mistrial under Article 770. The trial court properly found that defendant’s remedy was under Article 771. Mistrial under Article 771 “is at the discre *87 tion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial.” State v. Smith, 418 So.2d 515, 522 (La.1982). Moreover, a mistrial is not warranted unless a witness clearly refers to other crimes alleged to have been committed by the defendant. State v. Young, 05-702 at 12, 938 So.2d at 99. Sergeant Matthews’ comment was not a direct reference to other crimes. Rather, he spoke generally of information he had received about a black man riding a bicycle. In any case, it appears the trial court gave a sufficient admonition to the jurors to disregard the remarks.
The determination of whether prejudice has resulted lies within the sound discretion of the trial court, and will not be disturbed absent an abuse of that discretion. State v. Vincent, 07-90, p. 16 (La.App. 5 Cir. 10/16/07), 971 So.2d 363, 373. We see no abuse of the trial court’s discretion in its denial of defendant’s mistrial motion. Accordingly, we find this assignment of error to be without merit.
Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920, regardless of whether defendant makes such a request. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and note the following error.
112The minute entry for January 19, 2008, the day of trial, shows that the jury was polled after it returned its verdict. But the transcript shows the jury was not polled. When the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly we remand this matter and order that the minute entry be amended to conform with the transcript.
For the above discussed reasons, the defendant’s conviction and sentence are affirmed. The matter is remanded so the minute entry may be amended to conform ■with the transcript.

AFFIRMED AND REMANDED WITH ORDER.

JASMINE, J., concurs with reasons.

. Sergeant Matthews explained that a "cover” officer is one who acts as a backup to the investigating officer for safety purposes.

. Consider, by way of contrast, State v. Sylvester, 01-0607 (La.9/20/02), 826 So.2d 1106, in which the Louisiana Supreme Court found a police encounter became an investigatory stop when the police officer ordered the defendant to place his hands on a car "and [the defendant] complied, thereby submitting to the officer’s assertion of authority.” Sylvester, 01-0607 at 4, 826 So.2d at 1108 (emphasis in the original). See also State v. Atkins, 05-823 (La.App. 5 Cir. 3/14/06), 926 So.2d 591. The present case is distinguishable in that defendant, unlike the defendants in Sylvester and Atkins, did not comply with the officer’s request to put his hands on the car.

. LSA-C.Cr.P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testily in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

. LSA-C.Cr.P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

.A police officer is not considered a court official within the meaning of LSA-C.Cr.P. art. 770. See State v. Anderson, 02-273 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, writ denied, 02-2519 (La.6/27/03), 847 So.2d 1254.